UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JOHN L. TREADWAY, )
 )
   Plaintiff, )
 )
v. ) No. 2:13-CV-120
 )
CALIFORNIA PRODUCTS )
CORPORATION, )
 )
   Defendant. )

# MEMORANDUM OPINION

The complaint in this case alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), along with breach of contract. Through a joint stipulation filed in July 2014 [doc. 30], the parties agreed that the breach of contract claim should be dismissed with prejudice.

Plaintiff's age discrimination claim is now before the court on defendant California Products Corporation's ("CPC") motion for summary judgment [doc. 31]. Plaintiff has responded to the motion, and defendant has submitted a reply. For the reasons that follow, defendant's motion will be granted and this civil action will be dismissed.

# I.

*Background*

Plaintiff was born in 1942. He worked for defendant and defendant's predecessor entities [including Progress Paint Manufacturing Company ("Progress")] as a salesman for from 1978 through 2011.

Noel Booker was Progress's president. He later became defendant CPC's Vice President of Progress Brands Division, and he remained in that position at all times relevant to this case. Plaintiff testified that he told Booker on March 9, 2009, that he "would like to slow down some because I was 66 years old and I felt it was time I could slow down." Plaintiff insists that he did not mention "retiring."

The record contains two versions of a March 17, 2009 memorandum from Booker to plaintiff. Each version was submitted by the defense as an exhibit in support of its summary judgment motion. [Doc. 32, ex. 3, p.25; ex. 6, p.2; ex. 8, p.3]. The versions differ primarily in that the heading of the "2010" section of the memo reads "2010 (assumes you want to semi-retire)" in one version and "2010 (assumes you retire)" in the other. Also, one version references the "Carolinas territory" which the other version calls the "Harrison territory." By affidavit, Booker states that he prepared both versions but does not recall why.

The March 17, 2009 memorandum states that it "is a draft outline of what we discussed on the phone Monday 3/9/09. The premise of this plan is that Bill Huff and David Harrison territories are to be eliminated due to cost constraints." Under the proposal, for the remainder of 2009: plaintiff would take over Harrison's Carolina

2

accounts; plaintiff would take over Huff's two Bahamas accounts; and plaintiff's "existing accounts that are geographically closer to Knoxville than Johnson City will be re-assigned to David Lloyd." For 2010, the proposal contemplated that Progress would hire a new salesperson for the Carolinas territory, and plaintiff would then become an independent sales agent rather than an employee. Plaintiff would retain his three Bahamas accounts and his "current accounts within approximately 40 miles of Johnson City."

Plaintiff challenges the accuracy of the memorandum's use of the words "retire" and "semi-retire." However, in his deposition, plaintiff acknowledged that, according to the terms of the draft agreement, he "had to retire as a[n] employee and become an independent agent." He further acknowledged that had the proposed plan gone into effect, he would have been "semi-retired."

In August 2009, CPC acquired Progress's assets. CPC retained plaintiff, along with all of Progress's other sales employees. Half of those salespersons were over the age of sixty, and all of them were at least 49 years old. According to the affidavits of Booker and Steven McMenamin, the Chief Operating and Financial Officer of CPC, defendant began restructuring the territory and account assignments of almost all CPC salespersons between August 2009 and 2013.

In September 2009, defendant held a transitional meeting to discuss "issues associated with the integration of the Progress business and sales force." Attendees included Booker, McMenamin, CPC's Executive Vice President Daniel Cohen, and CPC's Chief Executive Officer Peter Longo. Booker took notes, which he subsequently

3

emailed to McMenamin, Cohen, Longo, and others on September 14, 2009. Regarding the plaintiff, Booker's meeting notes mention that "[t]he Progress salesman living in Johnson City, TN is slated to retire November 30, 2009. Thereafter, he would like to work as an independent agent continuing to handle the 3 Fixall accounts in the Bahamas and Gray Seal/Fixall accounts within an approximate 40 mile radius of Johnson City."

On June 9, 2010, Cohen emailed a document to McMenamin and Longo entitled "Proposed Territory Changes and Alignments." That document contained Cohen's "current recommendation[s] following the examination of the territories and markets." In regards to CPC's South Atlantic market, Cohen's proposed changes were that: plaintiff "retires"; Jim Turmelle would take over the Bahamas and Caribbean accounts; and a new hire would "manage and grow" Virginia, North Carolina, and South Carolina.

On October 27, 2010, Booker provided a "Sales Territories Consolidation/Expansion Plan" to Longo, McMenamin, and Cohen. In pertinent part, that document provided,

> John Treadway will retire at the end of 2010. For the past two years this territory [Virginia, North Carolina, and South Carolina] has been in a maintenance mode as opposed to a development mode, and has thus been declining. . . .
>
> . . .
>
> John Treadway wants to represent [CPC] as an independent agent, maintaining current dealers and developing new business in the Bahamas. John is willing to do this indefinitely. It would be to our advantage, and least disruptive to our customers, to pursue this through 2011 and likely into 2012, or until we are ready [to] assign this business elsewhere.

4

In an email dated December 27, 2010, plaintiff informed Booker, "I have no problem to continue working until you hire the person for my territory."

In October 2011, Booker hired David Boepple, age 57, to cover the Carolina accounts. David Lloyd, age 56, assumed most of plaintiff's Virginia business. At Booker's request, plaintiff introduced Boepple and Lloyd to the Carolina and Virginia clients that plaintiff had been servicing. As of November 2, 2011, plaintiff's remaining workload was only 12 accounts in Tennessee, three in the Bahamas, and one in Virginia.

On November 11, 2011, Cohen generated a letter to McMenamin and Longo "to recap my thoughts for the 2012 California Paint Division Structure." In material part, Cohen stated that with plaintiff's "retirement," the "Caribbean accounts would be best put into the hands of Jim Turmelle who has off shore experience."

On November 14, 2011, Booker emailed a proposal to Longo, McMenamin, and Cohen. In pertinent part, the proposal stated,

> As you know, we have hired David Boepple to replace John Treadway in the Carolinas, with the transition to be completed by mid-December. The current plan also calls for John to retire and Jim Turmelle to assume responsibilities for our 3 dealers in the Bahamas. . . .
>
> Prior to completely implementing this, however, I would like to have a final discussion regarding our additional opportunities in the Caribbean . . . . In particular, I would like to fully vet the idea of retaining [plaintiff], in an independent agent capacity, in order to develop prospects [in the Caribbean].
>
> . . .
>
> . . . While I favor this plan and am eager for us to pursue it, I also understand it needs to fit with our other strategic initiatives. . . .

5

Plaintiff received a copy of the proposal and admittedly did not correct Booker's use of the word "retire." Plaintiff further acknowledged in his deposition that Booker was advocating for him in the proposal, but that "the higher-ups told him to get rid of [me] because of [my] age."

On December 9, 2011, Booker called plaintiff to inform him that CPC would not retain him as an agent. According to the McMenamin affidavit, CPC chose to assign the Caribbean territory to Turmelle, who was a regional sales manager already covering accounts in Bermuda. According to McMenamin, "Turmelle already was servicing nearby Bermuda, and David Lloyd . . . already was servicing parts of Virginia and Tennessee. Based on these facts, I decided that it was far more cost-effective to have Turmelle and Lloyd cover Treadway's remaining accounts than it would be to pay Treadway a full salary to cover them." Defendant states that it processed plaintiff's separation from CPC as a "position elimination" rather than a retirement so that, at plaintiff's request, he could receive unemployment compensation.

Two to three months later, defendant hired Brian Bonsal, age 40, as a salesman covering Maryland and Virginia. By the end of 2012, Bonsal was servicing some accounts in Virginia that once belonged to plaintiff.

II.

*Summary Judgment Standard*

Rule 56(a) of the Federal Rules of Civil Procedure provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

6

matter of law." Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically-stored information. *See* Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

The movant must first demonstrate that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party carries that initial burden of showing that there are no genuine issues of material fact in dispute, the nonmovant must then present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992). "It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary

7

judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997).

III.

*Analysis*

Plaintiff complains that he was terminated, and that his workload was reassigned to younger persons, because of his age. The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In *Gross v. FBL Financial Services*, 129 S. Ct. 2343, 2350-51 (2009), the Supreme Court clarified that an ADEA claimant ultimately bears the burden of establishing that his age was the "but-for" cause of the employer's adverse action.

A. <u>*McDonnell Douglas*</u>

At summary judgment, the court evaluates plaintiff's inferential and circumstantial evidence using the familiar *McDonnell Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In *McDonnell Douglas* the Supreme Court established "the order and allocation of proof in a private, non-class action challenging employment discrimination . . . ." *McDonnell Douglas*, 411 U.S. at 800-03. A plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. The elements necessary to make a *prima facie* showing will vary depending on the facts of each case and the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that

8

he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

Plaintiffs bear the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). If a plaintiff is able to establish his *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id*. at 792-93 (citation omitted). If the employer successfully provides such a reason, *McDonnell Douglas*'s regime then places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805.

### B. *Prima Facie* Case

The present plaintiff has not cited *direct* evidence of age discrimination. The following exchange from his deposition testimony is instructive:

> Q. You have no idea whether [the termination] was because you were 70 or some other reason?
>
> A: I have no idea what was in their minds. I don't know what they are thinking up there.
>
> Q: Do you believe that if you were a younger man, you would still be employed by CPC today?
>
> A: I have no idea.

[Doc. 32, Ex. 1, dep. p. 143].

9

Therefore, to establish a *prima facie* case of age discrimination, plaintiff must show that: (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for his position; and (4) he was replaced by a significantly younger person, or a similarly-situated and significantly younger person was treated more favorably. *See Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). There is no dispute that plaintiff satisfies the first three of these elements. He has not, however, shown that he was replaced by a significantly younger person, or that a similarly-situated and significantly younger person was treated more favorably. For that reason, plaintiff has failed to establish a *prima facie* case of age discrimination.

The court will presume that Boepple, Lloyd, Turmelle, and Bonsal are significantly younger than plaintiff, *see Grossjean*, 349 F.3d at 336, but plaintiff has not shown that these men "replaced" him. "A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* (citation and quotation omitted). Such was not the case here. At the time of plaintiff's termination, Boepple, Lloyd, and Turmelle absorbed small parts of his sales territory in addition to their existing duties. Bonsal eventually was assigned a fraction of plaintiff's prior accounts, but that was in addition to Bonsal's responsibilities elsewhere in Virginia and Maryland. None of these persons "replaced" plaintiff. *Grossjean*, 349 F.3d at 336

Plaintiff also has failed to demonstrate that a similarly-situated and significantly younger person was treated more favorably. In identifying "similarly situated non-protected individuals," the court looks to those workers who are "nearly identical" to plaintiff in all "*relevant* aspects of [their] employment situation[.]" *Ercegovich v. Goodyear Tire & Rubber*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original) (citation and quotation omitted). The court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* While "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated,'" he must demonstrate similarity "in all of the *relevant* aspects." *Id.* (emphasis in original).

Neither Boepple, Lloyd, Turmelle, nor Bonsal was similarly situated to plaintiff. Plaintiff asked for, and received, a significantly reduced workload and was then terminated rather than being allowed to continue servicing that reduced workload as a fully-salaried independent agent. None of plaintiff's alleged comparators were in an even remotely-similar situation.

### C. Legitimate, Non-Discriminatory Reason

Even if plaintiff had established his *prima facie* case, defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination. Defendant decided that it would not be cost-effective to continue to pay plaintiff a full salary to work a limited territory, when existing employees were available to absorb plaintiff's remaining work.

11

D. Pretext

*McDonnell Douglas*'s regime places the final burden on plaintiff to "demonstrate by competent evidence" that defendant's explanation is in fact merely a pretext for age discrimination. *McDonnell Douglas*, 411 U.S. at 805. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false, *and* that discrimination . . . was the real reason.'" *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 486 (6th Cir. 2010) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original).

According to plaintiff, CPC's proffered reason is a pretextual whitewashing of discrimination. For example, plaintiff complains that defendant's use of the word "retirement" in some of its internal documents is illustrative of "bad faith age discrimination" because the word "retire" is associated with "advanced age." This argument is defeated by plaintiff's own admissions that the 2009 draft agreement contemplated that he "had to retire as a[n] employee and become an independent agent," and that if the draft agreement had gone into effect, he would have been "semi-retired." Further, "'retire' and 'age' are not synonyms." *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006).

Plaintiff also complains that Boepple and Bonsal were hired at salaries higher than his. In plaintiff's view, this shows that the alleged elimination of his position to save costs was merely a ruse. Plaintiff makes no effort, however, to address possible differences in experience, skill, and workload between himself and the two other salesmen.

Plaintiff complains that defendant "set [him] up to be discharged by taking his sales responsibilities away from him while he was still employed and by obtaining his active cooperation in this discriminatory maneuver by lying to him about its intentions and what it was really doing." It was, however, *plaintiff himself* who asked for reduced sales responsibilities. [Doc. 36, ¶ 5]. Plaintiff even complained that defendant took *too long* to hire his replacements. [Doc. 36, ¶ 20].

Plaintiff next accuses Booker of "deliberately lying to everyone, including Mr. Treadway, to keep Mr. Treadway servicing his expanded sales area while Booker and CPC were planning to 'retire' the plaintiff after they had given all his sales accounts to younger men." Plaintiff further accuses Booker of unilaterally and fraudulently changing the March 2009 memo (from "semi-retire" to "retire").

It was, however, *defendant* who furnished the court with both versions of the March 2009 memo. This lack of concealment diminishes plaintiff's argument that CPC was "up to something" regarding the memo. As for the argument that Booker was "deliberately lying to everyone" and "setting him up to be discharged," plaintiff acknowledged in his deposition testimony that Booker <u>was actually advocating *for him*</u> but "the higher-ups told him to get rid of [me]." The record shows that Booker (on behalf

13

of Progress) reached a *draft* agreement with plaintiff and did in fact advocate at virtually every turn to persuade CPC to adopt that proposal. Booker's "higher-ups" at CPC decided not to do so, but plaintiff has not made a credible showing that the "higher-ups" decision was based on his age.

In sum, plaintiff's conclusory allegations and subjective beliefs are insufficient grounds to show that defendant's proffered reason is pretextual. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992). This court does not sit as a "'super personnel department,' overseeing and second guessing employers' business decisions," *see Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006) (citation omitted), and a litigant may not establish pretext merely by questioning the soundness of his employer's business judgment. *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986).

IV.

*Conclusion*

For the reasons provided herein, defendant's summary judgment motion will be granted and this civil action will be dismissed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge